Estate of Henry W. Gimber, deceased. Appeal of the Commonwealth Title Insurance and Trust Company, and H. C. Webster, Executors.

*Practice, Supreme Court—Practice, Orphans' Court—Findings of fact—Review.*

An auditing judge's finding of fact confirmed by the court in banc will not be reversed by the Supreme Court, except for plain error.

An auditing judge found as a fact that the decedent, who had been the

solicitor of a building association, negligently and fraudulently certified that a property which was offered to the association as security for a proposed loan was free from incumbrances, and that the association was thereby induced to grant the loan which was lost because the property, prior to the loan, was incumbered to its full value, and the borrower was insolvent. The judge therefore allowed a claim of the association against the decedent's estate for the loss. The court in banc sustained the findings because it was not shown from the evidence that they were erroneous. *Held.* on appeal, that the decree of the court in banc should be sustained.

Argued Jan. 11, 1898. Appeal, No. 252, Jan. T., 1897, by Commonwealth Title Ins. & Trust Co. et al., from decree of O. C. Phila. Co., Jan. T., 1896, No. 167, dismissing exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to the adjudication of the account of the executors of the last will and testament of Henry W. Gimber, deceased.

A claim was presented by Robert E. Ramsey and George K. Sinnamon, assignees for the benefit of creditors of the Wharton Building and Loan Association, to recover damages for the negligence and nonperformance of duty by testator as solicitor of said association, whereby a large loss ensued to said association.

The other facts appear by the opinion of the auditing judge, HANNA, P. J., so far as it related to this appeal, which was as follows:

1. From the evidence presented it appears that in April and May, 1894, Henry C. Webster was president of said Wharton Building and Loan Association, and Henry W. Gimber was its solicitor. According to the by-laws of the association the duties of the solicitor were " to examine and peruse all title deeds, and make the necessary searches against all properties taken by this association as mortgage security, and in case of any incorrectness of the security he shall report the same to the board of directors; he shall prepare all bonds, mortgages, and other writings of a legal nature to be given or taken by this association in the course of its business," etc. Said Henry C. Webster was a stockholder in said association, and on May 1, 1894, having bid for a loan on seven shares of stock, which would authorize him to obtain $1,400, he offered

to the association as security therefor a mortgage on real estate owned by him, No. 1251 Point Breeze avenue, and No. 2023 Wharton street, to be accompanied by a perpetual policy of insurance in $1,500, and stated that the property was clear of all incumbrances. In accordance with the customs of building associations the application was referred to the committee on property, who subsequently reported to the association, and recommended the loan. On June 5, 1894, the directors of the association, also in pursuance of its by-laws, directed Mr. Gimber, as the solicitor and conveyancer of the association, to "examine title, make searches, draw bond and mortgage in the sum of $1,400, and all other necessary papers, and if all prove correct attest the same by signing the accompanying report." On the same day Mr. Gimber signed a report as conveyancer to the secretary of the association that he had "caused searches to be made; that there is no incumbrance on the real estate offered by said Henry C. Webster; that he has a good and perfect title to the same; that he has executed a bond and mortgage to the association in $1,400, which is on record in the proper office, and assigned a perpetual policy of insurance for $1,500." In consequence of this certificate the association on the same day and date paid to Henry C. Webster the sum of $1,400.

The evidence also shows that instead of the facts existing as certified by Mr. Gimber, the property, No. 1251 Point Breeze avenue, was incumbered by a mortgage to the United Firemen's Insurance Company for $1,800, but which it now appears was released therefrom, but the release has never been placed of record. And also by a mortgage for $5,900 given by said Henry C. Webster to the Cable Building and Loan Association. Unsatisfied judgments in the courts of common pleas also existed against said Webster.

Although said sum of $1,400 appears to have been paid by the association to Henry C. Webster, yet it does not appear that any bond and mortgage therefor was executed by him to the association, nor policy of insurance assigned. It does appear, however, that five months afterwards, viz: on November 6, 1894, said Henry C. Webster applied to the Building Association for a loan upon six and a half shares of stock, or $1,300, and offered the property, No. 1251 Point Breeze ave-

nue, as security, again stating the same to be clear of all incumbrances.   Upon the same day the loan was recommended by the committee on property.   It appears also that Mr. Webster on November 12, 1894, executed his bond and mortgage to the association for $1,300 upon the property No. 1251 Point Breeze avenue.   The same was acknowledged before Mr. Gimber as a notary public, and recorded on November 12, 1894.   The mortgage to the Cable Building and Loan Association was still an incumbrance against the property.   And on November 2, 1895, almost one year after the execution of the mortgage to the Wharton Building and Loan Association, Mr. Gimber, as solicitor for the Cable Building and Loan Association, issued a scire facias against said Henry C. Webster as mortgagor.   Mr. Gimber having died on December 27, 1895, other counsel caused the property to be sold at sheriff's sale, and on the first Monday of February, 1896, it was sold by the sheriff to the Cable Building and Loan Association. Thus the mortgage to the Wharton Building and Loan Association was discharged, and the amount advanced to said Henry C. Webster lost.

It seems from the evidence that these two transactions were one and the same, and that the prior loan of $1,400 upon seven shares was canceled and replaced by a loan of $1,300 upon six and a half shares, the single property on Point Breeze avenue being offered and taken as security.   The money was paid out to the borrower, clearly upon the faith of the report and representation made to the association by its solicitor, Mr. Gimber, and which representations were untrue.   And in consequence of his neglect of duty and mismanagement the association was the loser of the amount loaned.

It appears, however, that the borrower paid in on account of the loan to the association the sum of $117.54.   This reduces the loss to $1,282.46, as of November, 1895.

| | |
|---|---:|
| To which add to May 5, 1896, prior to the assignment by the Building Association interest and fines, | $    46.90 |
| Less payments, . . . . . . | 15.50 |
| | 31.40 |
| Add as above, . . . . . . | 1,282.46 |
| Making total loss, . . . . . | 1,313.86 |

2. It further appears that on February 5, 1895, said Henry C. Webster, who was then president of the Wharton Building and Loan Association, desired to make a further loan from said association. He accordingly applied for a loan of $2,000 upon ten shares of stock and offered as security the property Nos. 837, 839, 841 North Third street, and also No. 838 St. John street, and stated in his application that the said premises were insured perpetually for $2,000 in the United Firemen's Association, and were subject to a mortgage of $11,000.

The committee on property on the same day reported to the directors in favor of said loan. And on the same day Mr. Gimber reported as solicitor and conveyancer that he had " caused searches to be made; that there is no incumbrance except a mortgage of $11,000 ; that said Henry C. Webster has a good and perfect title to the said real estate ; has executed a bond and mortgage to the association in $2,000, which is on record, and he has assigned to the association a perpetual policy of insurance." While the true facts appear to be that said Webster was not the owner of the premises, nor did he have title thereto. It does not appear that Mr. Gimber made any searches, as it was shown he was not only the solicitor of the Building Association but private counsel for said Henry C. Webster, the borrower and president of the association ; that instead of there being a mortgage of $11,000 against the properties, as stated by said Webster and Mr. Gimber, there were four mortgages amounting to $13,750 ; and one of which, viz: to the Protective Building and Loan Association for $2,500 was actually in suit; and no bond and mortgage for $2,000 had been executed to the association by said Henry C. Webster, and of course not recorded, and no policy of insurance had been assigned to the association. Notwithstanding this condition of affairs, well known to Mr. Gimber and to said Webster, upon the report and representation of Mr. Gimber, the association on April 12, 1895, paid to said Webster the sum of $2,000. At this very date the premises which Webster offered as the security for the loan to him were in imminent danger of sale by the sheriff.

And subsequently were sold by the sheriff on first Monday of July, 1895, and purchased by Mr. Gimber, he taking title thereto.

From the evidence it thus appears that said Henry C. Web-

ster obtained $2,000 from the association, for which he never gave the association any security, through the representation and statements to the association by Mr. Gimber, and that said amount has been lost to the association ; the said Webster being admittedly now insolvent and unable to pay his debts.

The only defense to the claim appears to be that the association or its directors had full knowledge that said Webster did not have nor could make a good title to the premises, nor execute a mortgage to the association. But the only testimony upon this point is that of Webster himself, who should not be thus permitted to contradict both his own solemn statements at the time he obtained the loans nor the equally solemn assurances and representations made by Mr. Gimber, and upon the faith of which the directors of the association permitted their president to receive the $2,000. Nor is any knowledge upon the part of the association that there was any suit upon the mortgage referred to, its payment in part by Webster, and with the money obtained from the association, of the sheriff's sale, of the purchase by Gimber in his own name, taking deed therefor, and the declaration retained in his own possession until his death, and afterwards discovered, shown, except from the testimony of said Webster, nor did the association nor its directors ever authorize Mr. Gimber to do other than perform his duty as the solicitor and conveyancer. But even if competent, the testimony is that Mr. Gimber was acting more as the private counsel of said Webster than executing faithfully the trust reposed in him by the association.

As showing the exact loss by the association it appears that giving credit for the payments made by said Webster upon his stock balance, due upon the loan up to May 5, 1896, is $1,838.67.

There does not seem to be any other conclusion than that Mr. Gimber is clearly liable to make good to the association the amount lost through his negligence and want of good faith towards his client, the Wharton Building and Loan Association.

The claim of the assignees as above ascertained is therefore allowed.

The court in banc dismissed exceptions to the adjudication, filing the following opinion :

The questions raised by the exceptions are purely those of

fact, and no error being made to appear in the conclusions reached by the auditing judge, we can but apply the well-settled rule that the findings are not to be disturbed unless shown to be erroneous from the evidence. This has not been shown. The exceptions are accordingly dismissed, and adjudication confirmed.

*Errors assigned* were in dismissing exceptions to adjudication.

*S. Morris Waln,* for appellants.

*Francis Chapman* of *Chapman & Chapman,* with him *Wm. Alexander Brown,* for appellees.

PER CURIAM, January 24, 1898:

While the specifications of error are sufficiently numerous, there is nothing in the record to justify us in sustaining any of them. The subjects of complaint in the 4th and 16th are in finding the facts therein recited; in twelve of them, the subjects of complaint are in not finding certain facts therein referred to, and the remaining two relate to questions of evidence, etc. On exceptions to the learned auditing judge's findings of fact and conclusions, the questions presented here were duly considered by the court below in banc, who sustained the auditing judge and confirmed his adjudications. No error in this has been shown, nor do we think either of the questions referred to requires further notice. The case depended on questions of fact which, having been correctly determined by the auditing judge, were approved by the court in banc. The controversy should have ended there.

Decree affirmed and appeal dismissed at appellants' costs.